UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| BRENDA KING, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 14-078-DCR |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | **MEMORANDUM OPINION** |
| Administration, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Acting Commissioner of the Social Security Administration Nancy A. Berryhill's ("the Commissioner") Motion for Summary Judgment. [Record No. 18] The Commissioner contends that the Administrative Law Judge's ("ALJ") decision is free from reversible error and is supported by substantial evidence. Thus, she asserts that the decision should be affirmed. Plaintiff Brenda King ("King") did not move for summary judgment, although she was given an opportunity to do so. King alleges in her Complaint that the Commissioner's final decision is not supported by substantial evidence and that the ALJ applied incorrect legal standards. [Record No. 2] The Commissioner's motion will be granted for the reasons that follow.

I.     **Procedural History**

King filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") on October 5, 2010. [Administrative Transcript, hereinafter "Tr.," 57] King requested a hearing before an ALJ after the application was denied

initially and on reconsideration. She appeared before ALJ Donald Rising at an administrative hearing in Middlesboro, Kentucky in October 2011. ALJ Rising denied benefits in a written decision on February 22, 2013, which the Appeals Council affirmed. [Tr. 57-66, 51] Having exhausted her administrative remedies, King appealed to this Court under 42 U.S.C. § 405(g). [Record No. 1] However, the Social Security Administration could not locate essential parts of the administrative record. [Record No. 9] Because the administrative record was incomplete, the Court granted the Commissioner's motion to remand the case to the SSA for reconstruction of the record and a new hearing. [Record No. 10; Tr. 45-49]

King's case was assigned to ALJ Tommye Mangus following remand. Mangus conducted a hearing in June 2015 [Tr. 1384-1403] and issued a written decision on May 2, 2016, concluding that King was not disabled under the Act.[1] [Tr. 15-42] The Court granted the Commissioner's motion to reopen King's appeal in January 2018, and the parties were advised of their deadlines for filing dispositive motions. [Record Nos. 12, 14] Shortly thereafter, King's then-attorney, Ronald Cox, filed a motion to withdraw, stating that King had notified him that she no longer desired his representation in this matter. [Record No. 15] The Court granted Cox's motion to withdraw and advised the parties of their continuing obligations to file timely dispositive motions. [Record No. 16] King did not make any further filings, but the Commissioner moved for summary judgment on May 1, 2018. [Record No. 18] King has not responded to that motion.

## II. Background

---

[1] King filed a new claim for benefits in March 2014. The ALJ consolidated the claim files and issued a new decision on the consolidated claims. [Tr. 15]

King was thirty-nine years old at the time of her 2010 application. [Tr. 40] She claimed that she became unable to work on October 1, 2005, because of depression, anxiety, fibromyalgia, social anxiety, attention deficit-hyperactivity disorder ("ADHD"), back pain, hand pain, sleep apnea, and thyroid problems.[2] [Tr. 120] King had completed "some college," but reported that she struggled to keep up. [Tr. 1389, 1398] She was a widow, but her adult daughter and young grandson lived with her. [Tr. 1322-23] King held a driver's license and, in April 2014, reported driving to the post office daily. [Tr. 169]

King established care with Physician Assistant Mike Napier at Clover Fork Clinic in 1996. [Tr. 1027] Napier treated King regularly through 2015 for a variety of primary care concerns such as high cholesterol, hypertension, and hypothyroidism. [Tr. 803-1027, 1293-1344] She also complained of chronic pain in her back, which Napier attributed to fibromyalgia and/or arthritis, and prescribed Norco. [*See* Tr. 1293-97.] King attended physical therapy sessions for back pain in 2009 and experienced significant pain relief. [*See* Tr. 290-415.]

State agency consultant Daniel Stewart, M.D., examined King in April 2007. [Tr. 231] King complained of longstanding anxiety, accompanied by depression with a decreased attention span. *Id.* She also complained of generalized pain in her arm, wrist, and shoulder that was increased with movement. *Id.* However, Stewart noted that King's range of motion was without limitation and there was no tenosynovitis of any joint. [Tr. 233] Deep tendon reflexes were 2+ and symmetrical and strength was 5/5 at all extremities and at all levels. *Id.* Stewart concluded that there were no physical limitations that would preclude King from

---

[2] King has filed multiple applications for disability benefits, including an application for SSI in August 2008. [Tr. 57]

working. [Tr. 233-34] He recommended a formal psychosocial evaluation to assess the extent of any limitations resulting from psychiatric problems. [Tr. 234]

Jan Jacobson, Ph.D., performed a psychiatric file review on behalf of the state in June 2007. [Tr. 235-248] After reviewing the available evidence, Jacobson concluded that King's activities of daily living, social functioning, and concentration, persistence, or pace would be mildly limited due to a panic disorder without agoraphobia. [Tr. 240, 245]

King began mental health counseling at Cumberland River Comprehensive Care Center ("Comp Care") in June 2007. [Tr. 794] S. Raza, M.D., treated King periodically and managed her medications while she was being seen by Comp care counselors. King received individual counseling monthly from June 2007 through May 2015. [Tr. 585-794, 1346-1366, 1380-1383] Counseling notes indicate that King struggled with depression and stress from being the caregiver for her elderly mother, her adult daughter, and her young grandson. [*See, e.g.* Tr. 586, 614.] However, she generally reported that counseling and medication decreased her symptoms. *See id.* King was admitted to the psychiatric unit at the Harlan Appalachian Regional Hospital in September 2014 after reporting that she was feeling "very overwhelmed" and that her family had been "stressing her out." [Tr. 1166] Celexa was added as an anti-depressant, and King responded well. [Tr. 1163] King was discharged after five nights, reporting that her depression and anxiety were rated as zero out of ten. [Tr. 1164]

Robert Spangler, Ed.D., performed a psychological examination at the request of King's attorney in December 2012. [Tr. 568-74] King advised Spangler that she was scared to be alone and that she had experienced symptoms of depression since 1999. [Tr. 568] She also reported having experienced panic attacks since her husband passed away in August 2011. *Id.* Spangler administered the WAIS-IV, which produced a full-scale IQ score of 74, placing

King within the borderline range of intelligence. [Tr. 570-71] Spangler also administered the WRAT-4 Blue Form, through which he concluded that King's "word reading" fell at the 5.7 grade level, her "sentence comprehension" was at the 8.1 grade level, and her arithmetic computation was at the 4.0 grade level. [Tr. 571]

Spangler indicated that King's abilities to follow simple rules and to interact with supervisors were good, but her abilities to relate to coworkers, deal with the public, maintain attention/concentration, function independently, and deal with work stresses were only fair. [Tr. 572] He believed she would have, at best, fair abilities to make performance and personal-social adjustments in the work environment. [Tr. 573] Spangler indicated that King had no ability to make performance adjustments regarding detailed or complex instructions or to demonstrate reliability. *Id.* Finally, he indicated that she would likely be absent more than four days per month. [Tr. 574]

Mike Napier referred King to Kirpal Sidhu, M.D., in October 2014 for her complaints of right wrist pain. [Tr. 1341] Sidhu noted that King's thoracic and lumbar areas were not tender and that her range of motion was age-appropriate. [Tr. 1369] He further reported that she had no sciatic tension signs and no gross neurological deficits. *Id.* King did have a small amount of swelling on the dorsum of her right wrist, as well as positive Phalen's and Tinel's signs. Sidhu advised her to use a wrist brace and planned to obtain nerve conduction studies, but it appears these studies were never performed. *Id.* Antinuclear antibody ("ANA") and rheumatoid factor tests were negative in 2014. [Tr. 28]

ALJ Mangus reviewed the entire record and concluded that King had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416 C.F.R. 416.967(b) except she could:

perform no climbing of ladders, ropes, or scaffolds or more than frequent climbing of ramps or stairs, stooping, kneeling, crouching, or crawling. The claimant is limited to frequent handling and fingering bilaterally and should avoid concentrated exposure to vibration. The claimant is limited to simple, unskilled, routine tasks in object focused settings where workplace changes are occasional and introduced gradually. The claimant is limited to occasional contact with the general public. The claimant is limited to work requiring no greater than a 5th grade reading ability.

[Tr. 21] The ALJ concluded that, based on this RFC, jobs existed in significant numbers in the national economy King could perform and, accordingly, she was not under a disability. [Tr. 42]

### III. Standard of Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve

months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. § 416.920(e). If she can, she is not disabled. 20 C.F.R. §416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV. Discussion

A subsequent ALJ is bound by the findings of a previous ALJ unless there is evidence

that the claimant's condition has changed. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). In 2013, ALJ Rising adopted a 2010 RFC which concluded that King was able to perform medium work, except the work must accommodate her 5.7 grade level reading ability; must be limited to simple, routine tasks in an object-focused setting while requiring no more than occasional public interaction; King was to never climb ropes, ladders, or scaffolds, and she was to perform no more than frequent stooping, crouching, crawling, or kneeling. [Tr. 63] Mangus recognized her obligation to comply with *Drummond* [Tr. 15], but applied the five-step analysis and concluded that King's conditions had deteriorated such that she could no longer perform medium work, and limited her to light work as defined in 20 C.F.R. § 416 C.F.R. 416.967(b). Mangus also added restrictions specific to King's right wrist problems, which arose after ALJ Rising issued his opinion in 2013.

ALJ Mangus' decision is supported by substantial evidence. Mangus discussed the evidence of record in painstaking detail and determined that there was no new evidence to warrant changing the mental limitations in the prior RFC. There were no new medical source statements regarding King's psychological RFC after Rising's decision in 2013. As explained in the ALJ's thorough opinion, the Comp Care and Harlan ARH notes issued after that date did not indicate that there had been a change in King's level of functioning. [Tr. 35, 39]

The mental portion of the RFC is supported by substantial evidence, including the Comp Care treatment notes and the opinion of Jan Jacobson, Ph.D., who assigned mild limitations regarding King's ability to sustain concentration, persistence, and pace. Mangus appropriately concluded that King had only mild restrictions with respect to activities of daily living. [Tr. 19] In April 2014, King described an average day as getting up, making cereal, watching television, straightening up the house, going to the post office, feeding animals,

- 8 -

making supper, and sweeping. [Tr. 169] King's claims of limited intellectual ability are belied by the longitudinal record from Comp Care, which indicate that King was the primary caregiver for her elderly mother, adult daughter, and grandson. Although King claimed that she did not like being around other people, she drove to the post office daily. After her husband died in 2011, King advised her counselor at Comp Care that she had started dating, which indicates that King's claims regarding social functioning were exaggerated. [Tr. 19]

Substantial evidence also supports the physical limitations assigned in the RFC. It does not appear that any treating source has ever offered an opinion regarding King's ability to perform work activities. State agency consulting source Daniel Stewart, M.D., opined in 2007 that King had no physical problems that would preclude work. [Tr. 233-34] More recently, in 2014, treating physician Kirpal Sidhu, M.D., examined King and found normal results, with the exception of her right wrist. King has complained of back pain, fibromyalgia, sleep apnea, and thyroid disease, but there simply is no new evidence to indicate that any of these conditions has caused a decline in her function since the ALJ decision in 2013. [*See* Tr. 26.] As ALJ Mangus discussed, Clover Fork treatment notes indicate that these conditions were being controlled adequately through medications and physical therapy. Mangus incorporated new handling, fingering, and vibration limitations into the previous RFC to accommodate the ganglion cyst and carpal tunnel disease that developed subsequent to the 2013 decision.

V.     Conclusion

Based on the foregoing, it is hereby

**ORDERED** as follows:

1.     Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment [Record No. 18] is **GRANTED**.

2.  A separate Judgment affirming the Commissioner's decision will be entered this date.

3.  The Clerk of the Court is directed to send a copy of this Memorandum Opinion and Order and the corresponding Judgment to Plaintiff King at her address of record.

This 25th day of May, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge